In the Supreme Court of Georgia

Decided:     September 14, 2015

S15A0733.  AKHIMIE v. THE STATE.

HINES, Presiding Justice.

Krystol Akhimie appeals her convictions and sentences for felony murder and cruelty to children in the first degree, as well as the denial of her motion for new trial, in connection with the death of her infant son, Brian Berry, Jr. She claims that the evidence was insufficient to sustain her convictions, and that the trial court erred in denying a challenge for cause of a prospective juror and in permitting certain testimony which was inadmissible hearsay. For the reasons which follow, we affirm.[1]

_____

[1]The crimes occurred on October 31, 2007.  On December 19, 2008, a Cobb County grand jury returned a seven-count indictment against Akhimie and the child's father, Brian Antoine Berry: Count (1) - malice murder; Count (2) -felony murder while in the commission of cruelty to children in the first degree by striking the infant about the head and body with objects unknown; Count (3) - felony murder while in the commission of cruelty to children in the first degree by failing to seek necessary and adequate medical care for the infant; Count (4) - cruelty to children in the first degree by maliciously causing the infant cruel and excessive physical and mental pain by striking him about the head and body with objects unknown; Count (5) - cruelty to children in the first degree by maliciously causing the infant cruel and excessive physical and mental pain by failing to seek necessary and adequate medical care for him; Count (6) - cruelty to children in the first degree by maliciously causing the infant cruel and excessive physical and mental pain by fracturing his left femur in a manner unknown; and Count (7) - cruelty to children in the first degree by maliciously

The evidence construed in favor of the verdicts showed the following. On October 31, 2007, emergency personnel responded to a 911 call regarding non-responsive, seven-and-a-half-week-old Brian Berry, Jr. ("infant"). The infant lived at a home in Mableton with his mother, Akhimie, her fourteen-month-old daughter, Akhimie's mother, Akhimie's mother's two children, Akhimie's mother's fiancé, and another man. However, Akhimie was the infant's sole caregiver, except on those occasions when the infant's father, Brian Antoine Berry ("Berry"), was visiting. Berry began to stay at the house about two days a week, and during those times, he, along with Akhimie, Akhimie's daughter, and the infant, slept in the basement on a mattress on the bare concrete floor.

On October 31, 2007, Berry, Akhimie, and the two children spent time together in the basement. Early that afternoon, Berry took a nap alone with the

causing the infant cruel and excessive physical and mental pain by fracturing his ribs in a manner unknown. Akhimie and Berry were tried jointly before a jury May 2- 9, 2011. Akhimie was found not guilty of malice murder, but guilty of the remaining charges; Berry was found guilty of cruelty to children in the first degree as alleged in Count (5), but acquitted of the other charges. On May 13, 2011, Akhimie was sentenced to life in prison on Count (2), ten years in prison on Count (6), to be served consecutively to the sentence on Count (2), and ten years in prison on Count (7), to be served concurrently with the sentence on Count (6). The verdicts on the remaining counts were found to merge for the purpose of sentencing. Counsel originally filed a motion for new trial on Akhimie's behalf on May 12, 2011, and subsequently, counsel filed a replacement motion for new trial on May 16, 2011. Akhimie filed a pro se motion for new trial on October 31, 2011. A new trial was denied on December 12, 2012. On August 18, 2014, Akhimie was granted an out-of-time appeal by consent order, and a notice of appeal was filed the same day. The case was docketed in this Court for the April 2015 term, and the appeal was submitted for decision on the briefs.

infant in the basement; at the time, the infant appeared to be fine. When Berry, who was a sound sleeper, awoke a couple of hours later, he noticed that the infant "just didn't seem normal." Berry picked up his son, but the infant "just dangled there." Berry blew into the infant's mouth, attempting resuscitation, but was unsuccessful. Berry hurried upstairs to get Akhimie. Akhimie went down to the basement and attempted to revive the infant but was unable to do so. The couple took the infant outside where the light was better, and Berry called 911.

When emergency responders arrived, they found Berry holding the infant and attempting to put pants on him. The responders took the infant from Berry, determined that the infant was not breathing and had no pulse, and began performing cardio-pulmonary resuscitation ("CPR") on him. They immediately noticed that the lifeless infant had bruising on his face, and one of his legs was swollen. Berry appeared to be calm, while Akhimie was visibly upset. The responders could not resuscitate the infant and he was transported to the hospital where doctors were also unable to revive him.

Following an autopsy, it was determined that the infant died as the result of blunt head trauma. Such injury resulted in subdural hemorrhage, subarachnoid hemorrhage, and retinal hemorrhage, and was caused by a blow

to the back of the infant's head, likely inflicted by his head being slammed against a flat, hard surface. This type of blow would have caused the infant to become unconscious fairly quickly, go limp, and then arrest and die. There was also evidence of other injuries having been sustained by the infant as the result of his being violently shaken at some point. At the hospital, x-rays and other examination of the infant revealed that he had sustained numerous injuries inflicted at various times and had suffered from serious medical conditions; the infant had a fracture of the femur, which had begun to heal; a separated thigh bone; other fractures of the long bones of the lower extremities; fluid in the lungs; rib fractures, severe anemia, signs of heart failure, and fresh facial bruises. Typically, a baby with these types of injuries would cry a lot, at times be very lethargic, and would not have been "behaving normally for a long time." It would have been obvious to people around the infant that something was wrong with him. Investigators determined that Akhimie and Berry were the only individuals with custody of or access to the infant leading up to his death.

A visitor to the home on two occasions shortly before the infant's death witnessed the infant crying for prolonged periods of time and Akhimie being completely unresponsive to him. When Akhimie's mother heard the infant cry,

4

she would "holler or call [Akhimie] on the cell or scream to the front" to find out what was going on. The mother related to the investigating detective that the infant "cried all the time" and that she frequently had to "get [Akhimie] to tend to the [infant]." Akhimie described herself to the detective as "overprotective" of the infant; she also stated that the infant was "perfectly healthy," but admitted that he had not been to a doctor since his birth, and that if she and Berry had been able to revive him, they would not have called 911.

1. Akhimie contends that the trial court erred in denying her motion for new trial because the State failed to prove the felony murder charges beyond a reasonable doubt. She maintains that the evidence, which was entirely circumstantial, showed that she was merely present and was one of many people in the house that had access to the infant, and that there was no basis for reasonable persons to conclude beyond a reasonable doubt that she directly committed the crimes; intentionally helped in their commission; or intentionally advised, encouraged, hired, counseled, or procured another to commit them.

Under both former OCGA § 24–4–6, in effect at the time of Akhimie's trial, and present OCGA § 24–14–6, in order to convict Akhimie of the crimes

5

based solely upon circumstantial evidence, the proven facts had to be consistent with the hypothesis of her guilt and exclude every reasonable hypothesis save that of her guilt. *Roberts v. State*, 296 Ga. 719, 722 (1) (770 SE2d 589) (2015). Not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable. *Merritt v. State*, 285 Ga. 778, 779 (1), (683 SE2d 855) (2009). The reasonableness of an alternative hypothesis raised by a defendant is a question principally for the jury, and when the jury is authorized to find that the evidence, though circumstantial, is sufficient to exclude every reasonable hypothesis save that of the accused's guilt, this Court will not disturb that finding unless it is insupportable as a matter of law. *Black v. State*, 296 Ga. 658, 660 (1) (769 SE2d 898) (2015); *Carter v. State*, 276 Ga. 322, 323 (577 SE2d 787) (2003).

Here, the evidence included, but was not limited to, the facts that Akhimie and Berry were their child's sole caregivers and were the only ones with access to him in the timeframe of the fatal injury; indeed, Akhimie was the infant's prime caregiver and Berry did not continually reside in the home, but only visited a couple of days a week; the fatal head blow to the infant would have caused immediate and visible symptoms; the infant suffered many additional

6

violent injuries over the course of his young life; at no time prior to the fatal injury did Akhimie seek medical care or assistance for the infant even though he had visible injuries and suffered from serious medical conditions; she would not have sought medical care even after the child stopped breathing if she or Berry had been able to revive him; and her indifference to the infant's cries and care was observed on multiple occasions.

Certainly, an individual's mere presence at the scene of a crime is insufficient to show that the person is a party to the crime, but criminal intent can be inferred from a party's words, conduct, demeanor, motive, and all other circumstances of the act for which the accused is being prosecuted. *Thomas v. State*, 262 Ga. App. 492, 494 (1) (589 SE2d 243) (2003).

Here, the jury could reasonably infer that Akhimie inflicted the infant's fatal injury and some or all of the other injuries herself, and that she and Berry shared a common criminal intent to fail to seek medical aid for the child. *Black v. State*, supra at 660 (1). Based upon the evidence, the jury was not required to find that the hypothesis that Berry or someone else in the home committed the crimes acting alone was a reasonable one. Id. Instead, the evidence was sufficient under *Jackson v. Virginia*, 443 U.S. 307 (99 SCt. 2781, 61 LE2d 560) (1979),

to authorize a rational trier of fact to find Akhimie, either directly or as a party to Berry's criminal activity, guilty beyond a reasonable doubt of the crimes of which she was convicted. *Black v. State*, supra at 661 (1).

2. Akhimie next contends that the trial court abused its discretion in denying her challenge for cause to prospective Juror 31 on the basis of bias. But, the contention is unavailing.

During voir dire, the trial court asked the 36 members of the venire, which included Juror 31, the statutory qualifying questions of whether anyone had an opinion regarding the guilt or innocence of the accused or had any prejudice or bias either for or against the accused. None of the prospective jurors responded affirmatively, and Akhimie, through her counsel, expressly agreed that the venire persons were statutorily qualified to serve as jurors in the case. Following this, a rotation of panels of 12 prospective jurors were further questioned by the trial court, the State, and counsel for Akhimie and Berry, until enough potential jurors were qualified. Strikes for cause and peremptory strikes were made outside the hearing of the members of the venire .

During the questioning in this process, Juror 31 related that he had witnessed an instance of child abuse in which his childhood friend's father beat

his friend. Juror 31 indicated that although the event happened a long time ago, he still thought about it; he stated, "But, I'll be honest, I think, you know, I'm obviously going to have a bias," and then, "It's just, you know, I have to be honest; it could be a bias." However, he responded "no" when asked whether he had formed an opinion about the guilt or innocence of the accused. Further, when questioned about a prior experience of jury service, Juror 31 stated, "I just think I'm a very fair and unbiased person; I had to wait to take it all in." The State then asked if he could "continue to be fair and unbiased" if he was selected for the jury, and Juror 31 responded that he could. During further questioning outside the presence of the remainder of the panel, Juror 31 stated that he could "separate" himself from the long - ago instance of abuse he had witnessed, affirmed that he was capable of setting aside any bias or prejudice and would not have a bias in the present case, and indicated that he would base any finding of guilt on the evidence presented. Akhimie later moved to strike Juror 31 for cause, and the motion was denied. Twelve venire persons were selected to serve on the jury prior to reaching Juror 31, and during selection of the alternate jurors, co-defendant Berry exercised a peremptory strike in regard to Juror 31.

Whether to excuse a prospective juror for cause is at the discretion of the

trial court, and such discretion in this respect is broad. *Sears v. State*, 292 Ga. 64, 66 (2) (734 SE2d 345) (2012). This is so because the trial court is in the unique position to evaluate whether a potential juror is able to render an impartial verdict, inasmuch as the trial court, unlike an appellate court, can observe a prospective juror in person, and thereby assess demeanor and countenance rather than just verbal responses. Id. Consequently, this Court reviews the refusal to excuse a prospective juror for cause only for an abuse of discretion. Id. And, there is no such manifest abuse of discretion unless it is shown that the juror's opinion is so fixed and definite that the juror will not be able to set aside the opinion and decide the case based upon the evidence presented and the trial court's instructions regarding it; a prospective juror's initially expressed doubts as to his or her ability to be impartial do not mandate as a matter of law that the juror be excused for cause. *Hubbard v. State*, 285 Ga. 791, 792 (2) (683 SE2d 602) (2009). The voir dire of and colloquy with Juror 31 demonstrated that his opinion was not fixed and definite, that he indeed would be able to set aside any inclination of bias from the incident involving his childhood friend, and that he would decide the case based solely upon the evidence at trial. Thus, no abuse of the trial court's discretion can be found.

*Coe v. State,* 293 Ga. 233, 236 (2) (748 SE2d 824) (2013).

3. Lastly, Akhimie contends that the trial court erred by allowing into evidence inadmissible hearsay, thereby violating her right of confrontation under the State and Federal Constitutions, when it permitted the investigating detective to testify about statements made to him by another resident of the home, i.e., her mother's then fiancé , regarding how often Berry stayed at the home. However, this claim of error is likewise unavailing.

The testimony at issue was not elicited by the State but rather by counsel for Berry during cross-examination of the detective. Berry's counsel first asked the detective about what the fiancé, who did not testify at trial, had related regarding Berry's presence in the home. Akhimie's attorney objected "to anything [the fiancé] might have testified to or might have said." The objection was overruled. Berry's counsel continued the line of questioning, and Akhimie's attorney again objected, this time on the basis that he was unable to cross-examine the fiancé. After verifying that the fiancé would indeed not be testifying, the trial court sustained Akhimie's objection.      Insofar as Akhimie is claiming a Confrontation Clause violation in regard to the first instance of the questioning and the detective's response, she failed to make an objection on this

11

basis at trial and cannot raise it for the first time on appeal. *Blackshear v. State*, 285 Ga. 619, 621 (4) (680 SE2d 850) (2009). As to the second instance of the questioning and the resulting testimony, and insofar as Akhimie's trial objection raises a violation of the right of confrontation, the objection was sustained. A sustained objection to an improper question by counsel cannot be a basis for reversal unless it is contemporaneous with a denied motion for mistrial, denied request to strike, or denied request for curative instructions, none of which happened in the present case. *Evans v. State,* 190 Ga. App. 302 (2) (378 SE2d 903) (1989). See also *Moody v. State,* 273 Ga. 24, 27 (3) (537 SE2d 666) (2000) (sustained objection to *improper argument* of counsel cannot serve as basis for reversal unless contemporaneous with a denied motion for mistrial, denied request to strike, or denied request for curative instructions). In any event, the responsive testimony was cumulative of other admissible evidence, and therefore, any error in its admission can be deemed harmless beyond a reasonable doubt. *Hatley v. State*, 290 Ga. 480, 484 (2) (722 SE2d 67) (2012).

Judgments affirmed. All the Justices concur.