## S16A0767. PHILPOT v. THE STATE.
(794 SE2d 140)

BENHAM, Justice.

Appellant John Philpot and two others were charged with murder and other offenses arising out of the drive-by shooting death of Lisa Odell Mosby, along with the firing of gunshots toward Troy Mitchell, Anthony Floyd, and King Brown. The three co-defendants were jointly tried, and appellant and co-defendant Ernest Glass were convicted of all charges. Co-defendant Lizzie Philpot, appellant's younger sister, was found not guilty. Appellant challenges the sufficiency of the evidence, asserts that the trial court erred when it denied his motion to sever his trial from that of his co-defendants, and contends the trial court erred in failing to exclude his custodial statement, claiming it was made involuntarily with the hope of benefit. Having reviewed the record and considered appellant's arguments, we affirm the judgment of conviction.[1]

1. We first address appellant's challenge to the sufficiency of the evidence. The State presented evidence that the shooting incident arose out of an on-going dispute between Lizzie and Mitchell over the paternity and support of Lizzie's child, as well as a related dispute between Mitchell and Glass, who was Lizzie's current boyfriend. Viewed in the light most favorable to the verdict, the evidence shows

---

[1] The crimes occurred on February 10, 2003. On May 30, 2003, a Fulton County grand jury returned an eleven-count indictment charging appellant and his co-indictees with malice murder; two counts of felony murder (aggravated assault of Mosby and aggravated assault of all four victims); four counts of aggravated assault with a deadly weapon; and four counts of possession of a firearm during the commission of a felony. Appellant and his co-indictees faced a jury trial conducted between November 27 and December 12, 2006. The jury returned a verdict of guilty on all counts. The aggravated assault guilty verdicts with respect to victim Mosby merged with the felony murder convictions, and the felony murder convictions were vacated as a matter of law. The trial court sentenced appellant to life imprisonment for malice murder; three five-year sentences for the aggravated assault guilty verdict with respect to each of the remaining three victims, to be served concurrently with the life sentence; and concurrent five-year sentences to be served consecutively to the term of life imprisonment for each of the four convictions for possession of a firearm during the commission of a felony. Appellant filed a timely motion for new trial. After withdrawal of trial counsel and an order appointing appellate counsel, appellant filed amendments to his initial motion for new trial. After conducting a hearing, the trial court denied appellant's motion for new trial by order dated December 19, 2013. Appellant filed a timely notice of appeal, and this case was docketed to the April 2016 term of court for a decision to be made on the briefs.

that on the day of the shooting, Mitchell, Floyd, and Brown were involved in an armed confrontation with Glass at the home of Mitchell's aunt. The police were called, but Mitchell, Floyd, and Brown left before the police arrived. That evening, the co-defendants twice drove by Mitchell's house in a car owned and driven by appellant. The victims were standing on the front porch or front yard of the house, and the surviving victims later identified Glass as the man who fired at them from the front passenger seat of the car through open car windows both times the car passed by. After Glass shot the first round of bullets from the passenger's side window, appellant turned the car around and made a second pass at the victims and Glass fired additional shots over appellant through the driver's side window. This second time around, Mosby was struck, and she died from her gunshot wound. After initially making no identification of the driver, Mitchell and Floyd shortly thereafter identified appellant as the driver of the car to investigators, and he was arrested.

Again at trial, Mitchell and Floyd identified appellant as the driver of the car involved in the shooting, and it was undisputed that appellant owned that car. Appellant was well known to these witnesses. Evidence of the on-going dispute between Mitchell and Lizzie provided a motive for appellant's and Glass's conduct. Further, appellant made inculpatory statements in the custodial statement he gave to authorities. At trial, appellant presented evidence by which he sought to impeach the credibility of Mitchell's and Floyd's testimony, and he argued to the jury that the evidence supported the conclusion that the fatal bullet was fired by Floyd, who fired back at appellant's car. Co-defendant Glass made some of these same assertions in his appeal, but we concluded the evidence was sufficient to authorize Glass's convictions. See *Glass v. State*, 289 Ga. 706, 707-708 (1) (715 SE2d 85) (2011). Likewise, reviewing the evidence in the light most favorable to the verdict, we conclude the trial evidence was sufficient to authorize Philpot's convictions. Despite the evidence presented and arguments made by appellant, resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder and not this Court. See *Marchman v. State*, 299 Ga. 534 (1) (787 SE2d 734) (2016). A guilty verdict will be upheld where, as here, competent evidence, even though contradicted, was presented to support each fact necessary for the jury to find appellant guilty of the crimes charged. See *Miller v. State*, 273 Ga. 831 (546 SE2d 524) (2001); *Marchman*, supra, 299 Ga. at 539 (3) (a person who did not directly commit a crime may be convicted upon proof that a crime was committed and that the person was a party to it). The evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was

guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Just as co-defendant Glass did in his appeal, appellant asserts the trial court abused its discretion in denying his motion to sever his trial from that of his co-defendants. As this Court ruled in Glass's appeal, we reject this argument and find that "[t]he familial and personal inter-relationships of the three defendants and one of the victims were not so confusing as to warrant separate trials given that the relationships went to motive for the shootings and would have been admissible had the co-defendants been tried separately." *Glass*, supra, 289 Ga. at 708 (2). Likewise, as we decided in Glass's appeal, the fact that appellant and Glass presented antagonistic defenses was not sufficient to require severance, nor was the fact that Glass's testimony implicated appellant sufficient, "since the testifying co-defendant was subject to cross-examination by appellant's trial counsel and the testimony would have been admissible had appellant been tried separately." Id. at 709 (2).

Appellant asserts the additional argument that failure to sever his trial from Glass's trial required the redaction of portions of his custodial statement due to *Bruton*[2] issues that would arise should appellant elect not to testify at trial. According to appellant, this resulted in a statement read to the jury that was confusing and misleading and that failed to inform the jury accurately about what appellant stated to the detectives, thereby prejudicing his defense. This argument is unavailing since the State questioned appellant extensively on his statement once he elected to testify and the portions of the statement that implicated Glass were brought out at trial. See *Render v. State*, 266 Ga. 490, 491 (2) (467 SE2d 528) (1996). Whether to grant separate trials to co-defendants in a non-death penalty murder case is within the discretion of the trial court. OCGA § 17-8-4. Here, appellant has failed to demonstrate the requisite prejudice from the denial of the motion to sever to establish that the trial court abused its discretion in denying the motion. See *Rivers v. State*, 283 Ga. 1, 4 (2) (655 SE2d 594) (2008).

3. With respect to appellant's custodial statement, the State presented evidence that appellant made this statement after he was arrested and informed that he was suspected of murder, and after he executed a written waiver of his *Miranda* rights. Appellant filed a motion to suppress his signed written statement as well as testimony

---

[2] *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968) (holding the Confrontation Clause is violated by the admission of a non-testifying co-defendant's statement that inculpates the defendant).

regarding the statement, and the motion was heard immediately before the trial commenced. Appellant's interrogation was not recorded, but Detective O'Neil, who conducted the in-custody interview, testified at the pre-trial hearing that appellant's statement was committed to a four-page writing, which appellant reviewed and signed. Certain portions were redacted, as noted above, including statements about an unrelated crime and statements incriminating Glass. When asked on direct examination whether he had made a promise to Philpot that created some hope of benefit for making the statement, the officer answered, "Absolutely not." The officer also denied threatening Philpot in any way to make the statement. On cross-examination, Philpot's counsel asked the officer if he instructed Philpot that he would arrest his sister Lizzie unless Philpot told him what needed to be told, and the officer denied making such a statement. In response to counsel's question, the officer also testified that while he was familiar with the saying "first man talking is the first man walking," he had no idea if he had used that phrase with appellant, but further stated it was not a phrase he commonly used. Appellant offered no testimony at the motion to suppress hearing and, consequently, the officer's testimony was undisputed. The trial court found appellant's statements were given freely and voluntarily, that they were made after he was advised of his rights, and that he understood his rights at the time he gave the statement. Appellant further objected to admission of the redacted statement on the ground that its admission would not provide the jury with the complete statement appellant offered to the detectives and could be taken out of context. For this reason, appellant again argued that the solution was to sever the co-defendants' trials, but the trial court again denied that request.

At trial, appellant's redacted statement was read into the record without further objection, and it contained certain incriminating statements. Although no evidence was presented concerning the type of bullet that caused the victim's fatal wound because it exited her body and was not available for inspection, evidence was presented that a 9mm bullet and several 9mm shell casings were found at the scene. Appellant's redacted statement included the fact that on the night in question he obtained a 9mm handgun from one of his cousins, drove his car down the street where the shooting occurred, and that the weapon used in the shooting was a 9mm handgun.[3] Appellant

---

[3] Although it does not appear in the record, appellant asserts his full and unredacted statement included other details, including the fact that Glass was driving the vehicle on the first pass by the scene, that appellant got into the driver's seat to make the second pass, and that on both passes, Glass was the shooter. Appellant asserts that in the full statement he explained that he followed Glass's orders because Glass threatened him and he was in fear of Glass since

elected to testify, and on direct examination he stated that both Detective O'Neil and Detective Quinn participated in questioning him. Appellant denied the investigating detectives read him his rights and stated that the detectives had him sign the waiver of rights form after he gave his statement. He testified that his initial statement to the detectives was consistent with his testimony at trial that he did not participate in the shooting, but they accused him of lying and told him that if he did not cooperate they would incarcerate his sister. According to appellant, he then changed his story to the one the detectives told him to give in his own words. It was not until appellant was on re-direct, after having been cross-examined by the prosecutor and counsel for his co-defendants, that appellant testified the detectives made the statement "first man talking is the first man walking."

The State then called as witnesses both Detectives O'Neil and Quinn. Detective O'Neil denied he ever told appellant that if he did not change his account he was going to lock up his sister and denied making the statement that "first man talking is the first man walking." Detective Quinn confirmed O'Neil's testimony that Quinn did not interview appellant but supplied O'Neil with certain questions to cover in the interview. Quinn further testified he never made the alleged statements in question to appellant and that he never heard O'Neil or any other detective make those statements to appellant. He testified he would have remembered the rhyme "because it's kind of corny."

In his motion for new trial, appellant asserted the trial court erred in failing to exclude evidence of his custodial statement on the ground it was not made voluntarily, as required by former OCGA § 24-3-50,[4] but the trial court denied the request for new trial. In determining the admissibility of an in-custody statement, a trial court must determine from the preponderance of the evidence, and considering the totality of the circumstances, whether the statement was made freely and voluntarily. *Vergara v. State*, 283 Ga. 175, 176 (657 SE2d 863) (2008). Because admissibility of such a statement presents a mixed question of fact and law, " '[o]n appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous . . . and independently apply the legal principles to the facts.' " (Citation and punctuation omitted.) *Farris v. State*, 290 Ga. 323, 326 (2) (720 SE2d 604) (2012).

---

appellant had previously sworn out a warrant for Glass's arrest when Glass struck him in the mouth with a pistol. The record reflects, however, that appellant testified on direct or cross-examination about many of these details he claims were redacted from his written statement.

[4] Under Georgia's new Evidence Code, this rule is codified at OCGA § 24-8-824.

Pursuant to Georgia's former (and current) Evidence Code: "To make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." Former OCGA § 24-3-50. See also *Brooks v. Florida*, 389 U. S. 413, 415 (88 SCt 541, 19 LE2d 643) (1967) (constitutional due process prohibits the prosecutorial use of an involuntary statement). At the hearing on appellant's motion to suppress, no evidence was presented to support appellant's assertion that his in-custody statement was not made voluntarily. Instead, the officer who interrogated appellant testified appellant made his statement voluntarily and without any promise of benefit or threat of harm. The State bears the burden of demonstrating the voluntariness of a defendant's in-custody statement by a preponderance of the evidence,[5] and at the motion to suppress hearing, the State met that burden. In fact, the officer's testimony denying that he offered any hope of benefit as an incentive for appellant's custodial statement and his denial that he made any threat to arrest appellant's sister was undisputed. Appellant has failed to establish on appeal that the trial court erred in denying his pre-trial motion to suppress. See *Bryant v. State*, 268 Ga. 664, 667 (6) (492 SE2d 868) (1997) (no grounds for remand exist where appellant presented no evidence that would authorize a finding that her custodial statement was inadmissible for any reason). At trial, however, conflicting evidence was presented. Appellant testified he changed his initial narrative in response to the detective's threats to arrest his sister. The detective testified and denied this assertion. Appellant also testified he changed his story after being offered a hope of benefit when he was told "first man talking is the first man walking." Again, the detective denied this statement was made.

That portion of appellant's motion for new trial that raised again the admissibility of appellant's custodial statement was, in effect, a motion to reconsider the motion to suppress, and it is within the trial court's discretion to consider anew a motion to suppress that was previously denied. See *State v. Marcus*, 206 Ga. App. 385 (1) (425 SE2d 351) (1992); *Martin v. State*, 201 Ga. App. 716, 717 (1) (a) (411 SE2d 910) (1991).[6] Generally, the decision to set aside a ruling on a motion to suppress is within the discretion of the trial court. See, e.g.,

---

[5] See *State v. Ray*, 272 Ga. 450 (2) (531 SE2d 705) (2000).

[6] The motion for new trial (or motion for reconsideration of the denial of appellant's motion to suppress his custodial statement) was timely made and later amended, and therefore this case does not present the issue of a motion for reconsideration that was not timely made within the same term of court. See *Moon v. State*, 287 Ga. 304, 305 (696 SE2d 55) (2010) and the concurrence of Justice Nahmias at 305-312.

*Martinez-Rodriguez v. State*, 195 Ga. App. 491, 492 (4) (393 SE2d 748) (1990); *Chastain v. State*, 158 Ga. App. 654, 655 (281 SE2d 627) (1981). But where, as here, additional argument and evidence to support a claim that certain evidence should have been suppressed was known but not raised at the motion to suppress hearing, and the defendant did not ask the trial court during the trial to reconsider the motion to suppress in order to take new evidence into account, a court does not abuse its discretion in declining to reconsider the issue of admissibility at the motion for new trial. See *Gunsby v. State*, 248 Ga. App. 18, 21 (2) (545 SE2d 56) (2001). See also *Huntley v. State*, 244 Ga. App. 212, 213 (2) (535 SE2d 270) (2000) (when new evidence comes to light during trial, the decision whether to set aside a previous order denying a motion to suppress is within the discretion of the trial court). No reason is shown why appellant was not available to testify at the motion to suppress hearing, at which time the trial court could have made a factual determination based on credibility of witnesses and other evidence as to whether the disputed statements were made and, if made, a legal determination as to whether the statements created an improper inducement by the hope of benefit or fear of threat. Although the State bears the burden of proving the admissibility of evidence challenged by a motion to suppress, the defendant may challenge the State's evidence at the motion to suppress hearing with his own evidence, but appellant did not do so in this case even though such evidence was known to him. Accordingly, we reject appellant's assertion that the trial court erred by finding at the pre-trial hearing that appellant's custodial statement was admissible or that it abused its discretion by later denying his motion for new trial on this ground.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 2016.

*Eric J. Taylor*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Paige Reese Whitaker, David K. Getachew-Smith, Sr.*, Assistant District Attorneys; *Samuel S. Olens*, Attorney General, *Patricia B. Attaway Burton*, Deputy Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Meghan H. Hill*, Assistant Attorney General, for appellee.