300 Ga. 532
FINAL COPY

S16A1766.  SMITH v. THE STATE.

BENHAM, Justice.

Appellant Roderick Smith was convicted of malice murder and other offenses arising out of the shooting death of his girlfriend, Sherita Dunham. Smith appeals his conviction and sentence and the order denying his motion for new trial.[1]  We affirm the convictions, but remand for resentencing.

   1.    The record belies Smith's claim that the trial evidence was insufficient to support his conviction.  Viewed in a light most

---

[1]  The crimes occurred on September 27, 2008.  On December 23, 2008, a Fulton County grand jury returned an indictment charging appellant with malice murder (Count 1); felony murder (aggravated assault by shooting the victim with a handgun) (Count 2); felony murder (possession of a firearm during the commission of a felony) (Count 3); aggravated assault with a deadly weapon (Count 4); possession of a firearm during commission of a felony (Count 5); and possession of a firearm by a convicted felon (Count 6).  Appellant was tried March 30 through April 2, 2014, and the jury returned a verdict of guilty on all counts.  The trial judge sentenced appellant to life imprisonment for the conviction for malice murder and imposed a five-year sentence to be served consecutively for the conviction for possession of a firearm during commission of a felony (Count 5).  The felony murder convictions were vacated by operation of law.  The aggravated assault conviction (Count 4) merged into the murder conviction, but the conviction for possession of a firearm by a convicted felon (Count 6) did not merge.  As noted in Division 4 of this opinion, the sentence is vacated in part and the case is remanded for further sentencing on Count 6.  On April 27, 2009, appellant filed a motion for new trial which was later amended.  Following an evidentiary hearing, the trial court denied the motion for new trial as amended by order entered July 23, 2014.  Appellant filed a timely notice of appeal.  The case was docketed in this Court to the September 2016 term for a decision to be made on the briefs.

favorable to the verdict, the evidence showed Smith shot the victim because he believed she was the one who took $400 in cash and his cell phone from his bedside table while he was asleep at the rooming house where he was living. Both Smith and other witnesses testified the victim had a substance abuse problem, and Smith testified he attempted to keep her from using money he had saved to purchase drugs. Others at the house on the evening in question testified Smith became increasingly angry as the night progressed after he awoke and discovered the missing property and the victim failed to return home. Smith left the house during the night to search for the victim but returned home without her. The shooting occurred when the victim returned to the house the next morning. A witness testified he walked to the door of the house with the victim who did not appear to be injured at that time. He saw Smith answer the door and heard him call the victim a bitch. The witness then saw Smith hit the victim in the head with the hand in which he held a revolver and saw him grab her arm to pull her into the house. The witness testified Smith and the victim were "tussling," and the witness ran away from the house when he heard the sound of a gunshot. After the shooting, Smith

2

dialed 911 and asked for an ambulance.  He falsely reported to the operator that the victim had appeared at his door bleeding and that he did not know what had happened.  While he was on hold with 911 he took the revolver apart and hid the pieces in the yard.  At the scene, officers became suspicious of Smith and read him his rights before transporting him to the homicide office.  Smith initially requested an attorney and, although Smith disputed that he ever waived his right to an attorney, the testimony of three officers involved in his interrogation supported the conclusion that Smith later waived his right to an attorney, volunteered to speak, and told the officers where he had hidden the parts of the revolver, which were recovered.  In the interview, Smith claimed the shooting was an accident.

From the trial evidence, however, a jury could conclude that the evidence refuted Smith's statements to investigators, as well as his testimony at trial, that the shooting was an accident.  At trial, Smith initially testified he was trying to clear the weapon from the victim's reach when it went off.  On cross-examination, Smith admitted that at some point the gun was obviously pointed at the victim but continued to claim the gun went off accidentally.  He also admitted he had been angry at the victim for taking money the two

had agreed to save for their future. Expert testimony established that the gun found in pieces in the yard of the house where the victim was shot was able to be fired for ballistic testing and that the bullet recovered from the victim's body was fired from that .32 caliber revolver. The medical examiner who conducted the autopsy on the victim's body testified the fatal gunshot wound was a contact wound sustained when the barrel of the gun was placed with "quite a bit of force" against the victim's chest. Additionally, witnesses testified that Smith and the victim frequently fought and sometimes the fights would get physical.

"Despite the evidence presented and arguments made by appellant, resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder and not this Court." *Philpot v. State*, 300 Ga. 154, 155 (1) (794 SE2d 140) (2016). Instead, this Court considers whether the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Gill v. State*, 295 Ga. 705, 707 (1) (763 SE2d 719) (2014). "It is for the trier of fact to determine whether any killing is intentional and malicious from all the facts and circumstances." (Citation and punctuation omitted.) *Patterson v. State*, 264

4

Ga. 593 (1) (449 SE2d 97) (1994). Here, the physical evidence, along with Smith's own testimony on cross-examination, refutes Smith's testimony that he was trying to clear the weapon from the victim's reach at the time the gun accidentally went off. Having examined the record evidence, summarized above, we conclude the evidence was sufficient to meet the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Smith also argues the trial court erred by failing to exercise its discretion to grant a new trial pursuant to the general grounds set forth in OCGA §§ 5-5-20 and 5-5-21, because the verdict was contrary to the evidence or was decidedly and strongly against the weight of the evidence, and that the evidence was sufficiently close to warrant the trial court in its discretion to grant a new trial acting as the "thirteenth juror." Smith also asserts that this Court should grant a new trial for those reasons. A motion for new trial on these grounds, however, is not properly addressed to this Court as such a decision is one that is solely within the discretion of the trial court. See *Slaton v. State*, 296 Ga. 122, 125 (2) (765 SE2d 332) (2014). In its order denying Smith's motion for new trial, the trial court recited it had weighed the evidence, including the credibility of witnesses, and found Smith

5

was not entitled to a new trial on the general grounds. The trial court having exercised its discretion as the thirteenth juror, and this Court having found the evidence was sufficient to support the verdict, we find no abuse of discretion in its denying the motion for new trial. See *Ridley v. State*, 236 Ga. 147, 149 (1) (223 SE2d 131) (1976).[2]

2. We reject Smith's assertion that the trial court erred by failing to grant his motion to strike a particular juror for cause. That juror stated in response to questioning by the prosecutor that she "[had] a problem" with men hitting women, and that eighteen to nineteen years ago she had been the victim of domestic violence that sent her to the hospital. When asked whether her personal experience would make it difficult for her to be a fair and impartial juror, the juror initially stated she did not know how to answer that question. When further asked if she would be able to judge this defendant based solely upon the information learned at trial, she affirmed that she could do that. In response to questioning by Smith's counsel, the

---

[2] As this Court reiterated in *Ridley*, the weight of the evidence ground for new trial under the general grounds "is addressed to the trial court alone, not an appellate court." Because the jury considers the weight of the evidence at trial and the trial court, sitting as the "thirteenth juror," considers the weight of the evidence when ruling on this ground for a new trial, this Court considers only the sufficiency of the evidence that was considered by the jurors in arriving at the verdict. *Ridley*, supra, 236 Ga. at 149 (1).

juror responded that she would not hold any bias against the defendant based upon her prior personal experiences.

This Court reviews a denial of a request to excuse a prospective juror for cause for abuse of the trial court's discretion. See *Akhimie v. State*, 297 Ga. 801, 806 (2) (777 SE2d 683) (2015). The trial court, unlike an appellate court, is in a position to observe the prospective juror in person and assess the juror's demeanor in addition to verbal responses. Id.; *Burney v. State*, 299 Ga. 813, 816 (2) (792 SE2d 354) (2016). Where, as here, a prospective juror indicates her opinion is not so fixed that she could not set aside an inclination of bias from past personal experience, no abuse of discretion is shown. *Akhimie*, supra, 297 Ga. at 806 (2) (where the prospective juror initially disclosed a possible bias against a person charged with the offense involved in the case as a result of his personal experience but, upon further questioning, affirmed he would be able to set aside any bias and would base any finding of guilt on the evidence in question).

3.      Smith asserts ineffective assistance of trial counsel in two respects. First, Smith points to trial counsel's decision to waive the previously filed pre-trial motion to suppress Smith's custodial

7

statements to the investigators, as well as counsel's failure to make an in-trial objection to admission of evidence and testimony relating to those statements. During his interrogation Smith disclosed the location of the weapon parts that were recovered from the back yard of the house where the crimes occurred. Smith claims these statements were obtained unconstitutionally since at the time he made them he had not waived his previously asserted right to counsel, though we note that conflicting evidence was presented as to the voluntariness of his statements. He further claims that the weapon introduced at trial was therefore obtained as fruit of the poisonous tree, and that both his custodial statement and certain trial exhibits would have been excluded if counsel had raised the proper objections. Because this evidence was highly prejudicial and because he claims trial counsel's performance was deficient by waiving and failing to raise the objections, Smith asserts he has demonstrated ineffective assistance of counsel.

(a) With respect to the withdrawal of the previously filed motion to suppress, trial counsel stated on the record during trial that her decision to withdraw the motion to suppress was

based on trial strategy. At the motion for new trial hearing, counsel testified that during the trial, before Smith's custodial statements were introduced, she learned that Smith wanted to testify. Her decision to withdraw the motion to suppress was based upon her knowledge that once Smith testified, his custodial statement would be admitted for purposes of impeachment. "Deliberate choices of trial strategy and tactics are within the province of trial counsel after consultation with [her] client." *Hudson v. State*, 250 Ga. 479, 486 (8) (299 SE2d 531) (1983). In order to demonstrate deficient performance of trial counsel with respect to a decision relating to trial strategy, an appellant is required to show that counsel's decision was so patently unreasonable that no competent attorney would have made such a decision under similar circumstances. See *Benton v. State*, 300 Ga. 202, 205 (3) (794 SE2d 97) (2016). Here, Smith has failed to make such a showing. Thus, with respect to counsel's withdrawal of the motion to suppress and failure to object to testimony about Smith's custodial statements, Smith has failed to show deficient performance of counsel, which is one of the two required prongs

9

of the *Strickland v. Washington*[3] test for establishing ineffective assistance of counsel. As a result of Smith's having failed to establish the "deficient performance" prong of the *Strickland* test, this Court is not required to examine the other—the "prejudice" prong. *Capps v. State*, 300 Ga. 6, 8 (2) (792 SE2d 665) (2016).

(b) With respect to trial counsel's failure to object to the introduction of the weapon at trial, Smith failed to establish either prong of the *Strickland* test since he failed to question trial counsel at the motion for new trial hearing about her decision not to object. Counsel's trial decisions are presumed to be strategic, and, absent some evidence to the contrary, an appellant fails to overcome the strong presumption that trial counsel's performance fell within the range of reasonable professional conduct and was not deficient. See *Lane v. State*, 299 Ga. 791, 795 (3) (792 SE2d 378) (2016); *Patel v. State*, 279 Ga. 750, 754 (c) (620 SE2d 343) (2005). Compare *Lupoe v. State*, 300 Ga. 233, 242 (2) (c) (794 SE2d 67) (2016) (finding insufficient evidence to support an

---

[3] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

ineffective assistance claim where trial counsel was not questioned about his reason for failing to seek severance of his client's trial from that of his co-defendants). Furthermore, the trial court recited in its order denying the motion for new trial its conclusion that the weapon was located as a result of a search conducted pursuant to a search warrant which police had probable cause to obtain even without Smith's incriminating statements. That conclusion is supported by the record, especially since neither the affidavit supporting the application for a search warrant of the premises nor the search warrant that was issued refers to statements made by Smith, and Smith does not challenge this conclusion. Consequently, Smith has failed to establish that a challenge to this evidence on the ground that it was the fruit of the poisonous tree would have had merit. Deficient performance is not shown by counsel's failure to raise a meritless objection. See *Grissom v. State*, 296 Ga. 406, 412 (4) (768 SE2d 494) (2015).

4. The trial court's sentencing order recites that the conviction for Count 6, possession of a firearm by a convicted felon,

11

merged into the murder conviction.  As this is a crime that requires proof of elements not included in malice murder, i.e., possession of a firearm and the status of being a convicted felon, this conviction did not merge as a matter of fact with Smith's murder conviction.  See *Jones v. State*, 299 Ga. 377, 381 (2) (788 SE2d 477) (2016).  The trial court should have sentenced Smith for the conviction on the charge of possession of a firearm by a convicted felon in addition to the sentence imposed for murder.  "Accordingly, we vacate that portion of the sentencing order in which the trial court 'merged' [Count 6 into Count 1], and remand this case to the trial court for resentencing on [Count 6]."  Id.

Judgment affirmed in part and vacated in part, and case remanded for resentencing.  All the Justices concur.

Decided February 6, 2017.

Murder. Fulton Superior Court. Before Judge Glanville.

Kenneth W. Sheppard, for Appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Marc A. Mallon, Assistant District Attorneys; Samuel S. Olens, Attorney General,

Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Ashleigh D. Headrick, Assistant Attorneys General, for Appellee.