350 Ga. 878
FINAL COPY

S19A0443.  MOSS v. THE STATE.

PETERSON, Justice.

Robert Moss appeals his conviction for murder in connection with the 2010 shooting death of Rosa Mae Brown.[1] Moss challenges the sufficiency of the evidence to support his conviction and contends that the trial court abused its discretion by denying his motion for change of venue. We affirm.

The trial evidence viewed in the light most favorable to the verdict shows that on the afternoon of October 19, 2010, Moss shot Brown once in the head with his .22-caliber Marlin rifle. She died as a result.

---

[1] Moss was indicted by a Hancock County grand jury on March 29, 2011 for malice murder and felony murder predicated on aggravated assault with a deadly weapon. At trial in October 2011, the jury convicted Moss on both counts. Moss was sentenced to life for malice murder, and the felony murder count was vacated by operation of law. Moss filed a timely motion for new trial on November 10, 2011, and amended it on July 18, 2018. On August 8, 2018, the trial court denied the motion. Moss timely filed his notice of appeal. His appeal was docketed in this Court for the term beginning in December 2018 and was submitted for a decision on the briefs.

For roughly 12 years, Brown had lived with Moss. Sometime in 2010, they stopped dating, and Brown moved 14 feet away to a next-door residence. Brown's daughter Dorothy Hall, Hall's son, and Hall's boyfriend Ronnie Miller also moved in with Brown. At some point, Brown began a romantic relationship with James Perry, who moved in with her as well.

Moss repeatedly told Brown that it "wasn't over between them." Weeks before the shooting, Moss told Miller, "I should have killed both" Brown and Perry, and the night before the shooting, with his rifle right beside him, Moss told Miller that "I'm going to kill both of them[.]"

On the morning of the shooting, Hall, Perry, and Hall's son left the house, leaving Miller and Brown at home. When Perry called Brown around 11:00 a.m., he heard in the background Moss and Miller, who were at the house drinking. Later, Miller, Moss, and two neighbors went over to Moss's home to continue drinking. Miller was passed out on Moss's couch when the two neighbors left around 3:00 p.m.

About the same time, Brown went to see her neighbor Lateshia Scott. A few minutes after Brown returned home, Scott and her boyfriend heard a gunshot. Moments later, Perry arrived back home to find Brown shot in the back yard, about 30 yards from Moss's back door.

About the same time, Moss went to a neighbor's house, sweating heavily. When he heard an ambulance going toward his house, Moss got in his car, left his neighbor's home in great haste, and turned down Old Eatonton Road.

Police summoned to the scene found a .22-caliber shell casing just four feet from Brown's body and three other shell casings close together nearby. The back door to Moss's house was open, and a live .22-caliber round was lying in the doorway. Inside, Miller was still unconscious on the couch. Moss was found by deputies on Old Eatonton Road driving back toward his house. The deputies followed him home; he was drunk and angrily questioned the officers when he got out of the car.

In Moss's house, police found a box of .22-caliber bullets and a

receipt for a .22-caliber Marlin rifle purchased by Moss. Three days later, approximately two-and-a-half miles down Old Eatonton Road from the scene of the shooting, Moss's .22-caliber rifle was found in a ditch, containing thirteen of fifteen rounds.

All of the shell casings obtained from the crime scene were fired by the .22-caliber rifle recovered on Old Eatonton Road. The deformity of the bullet from impact prevented the expert from confirming that the bullet taken from Brown's body was fired by the same rifle, but the expert did conclude that it was fired from a .22-caliber rifle of the same type.

1. Moss challenges the sufficiency of the evidence to convict him of malice murder. We disagree.

In cases like this one where convictions are based on circumstantial evidence, the evidence must be "consistent with the hypothesis of guilt" and "exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. Not every hypothesis is reasonable, and the reasonableness of alternative hypotheses raised by a defendant is a question principally for the

jury. *Akhimie v. State*, 297 Ga. 801, 804 (1) (777 SE2d 683) (2015). Where the jury is authorized to find the evidence sufficient to exclude every reasonable hypothesis save that of the accused's guilt, "this Court will not disturb that finding unless it is insupportable as a matter of law." Id. When reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

Moss contends that the State failed to exclude every reasonable hypothesis because it failed to exclude the possibility that Brown was shot by either Miller or an unidentified individual in a red truck seen by a witness in the area shortly before the shooting. He also notes that the gun was found next to a driveway used daily by three families three days after Moss was arrested.

Contrary to Moss's arguments, the evidence viewed in the light most favorable to the verdicts indicates that Moss desired to kill Brown, shot Brown with his Marlin .22 rifle, went to a neighbor's house, then upon hearing an ambulance going toward Brown's

residence, drove away down Old Eatonton Road where he disposed of the gun, and was then found by police drunkenly driving back towards the scene. Miller was found unconscious on Moss's couch and required substantial effort to rouse.

Given these facts, a rational trier of fact could have excluded every other reasonable hypothesis and found beyond a reasonable doubt that Moss, not Miller or the unidentified driver of the red truck, shot and killed Brown.

2. Moss argues that the trial court erred by denying his motion for change of venue. We disagree.

To succeed on a motion for change of venue, "a defendant must show either that the setting of the trial was inherently prejudicial or that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible." *Heidt v. State*, 292 Ga. 343, 348 (4) (736 SE2d 384) (2013) (citation and punctuation omitted); see also OCGA § 17-7-150 (a) (1). The decision to grant or deny a motion for change of venue will not be disturbed absent an abuse of discretion. *Heidt*, 292 Ga. at 348 (4).

Moss has made no showing of inherent prejudice and argues only that the selection process evidenced actual prejudice. Moss claims that 36 percent of the jurors questioned had prior knowledge of the case, knew him or Brown, or were related to a State's witness. As to actual prejudice, however, "the question is not the number of jurors who had heard about the case" or had knowledge of those involved in the case, but "whether those jurors who had heard about the case could lay aside their opinions and render a verdict based on the evidence." *Gear v. State*, 288 Ga. 500, 502 (2) (705 SE2d 632) (2011) (quoting *Chancey v. State*, 256 Ga. 415, 432 (5) (C) (349 SE2d 717) (1986) (punctuation omitted)). Actual prejudice is thus shown by the excusal percentage — the number of potential jurors excluded for cause based on bias compared to the total number of potential jurors questioned. Id. (citing *Jenkins v. State*, 268 Ga. 468, 469-470 (2) (491 SE2d 54) (1997), overruled on other grounds by *Hamm v. State*, 294 Ga. 791, 795 (2) (756 SE2d 507) (2014)).

Of the 52 potential jurors questioned in this case, 19 were dismissed for cause. Although many potential jurors indicated they

had knowledge of the case or those involved therein, of those excused, only 12 were dismissed on account of their inability to be impartial based on that knowledge.[2] Thus, the excusal rate was only 23 percent. This excusal rate is not indicative of such prejudice that the trial court's denial of a change in venue was an abuse of discretion. See *Chancey*, 256 Ga. at 432 (5) (C) (excusal rate of 40 percent did not compel a finding of actual prejudice to a degree rendering the trial unfair).

Judgment affirmed. All the Justices concur.

---

[2] The other seven potential jurors were dismissed for various other reasons including being a blood relation of the defendant, being a potential State's witness, having a family surgery, holding religious objections, being a probation officer with arrest powers, having Alzheimer's, and believing any criminal defendant is guilty. In this context, these reasons do not evidence actual prejudice against Moss.

Decided May 20, 2019.

Murder. Hancock Superior Court. Before Judge Prior.

John H. Bradley, for appellant.

Stephen A. Bradley, District Attorney, Daniel B. Cochran, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.