## S08A1877. NIXON v. THE STATE.

(671 SE2d 503)

SEARS, Chief Justice.

The appellant, Tayari Nixon, appeals from his conviction for the felony murder of his two-month-old son, Savieon Nixon.[1] On appeal, Nixon's sole contention is that the evidence is insufficient to support his conviction. Because we conclude the evidence is sufficient, we affirm.

On September 15, 2006, Savieon Nixon was born to Denise Blake and Nixon. Savieon lived in an apartment in Douglas, Georgia, with his parents and Ms. Blake's two-year-old daughter, Emani. At 12:33 p.m. on November 22, 2006, emergency medical personnel left the local hospital in response to a 911 call by Ms. Blake reporting that Savieon was not breathing. The emergency medical personnel arrived at the apartment at 12:35 p.m., discovered that Savieon had no pulse, and immediately transported him to the hospital without performing any advanced measures due to the short ride to the hospital. The emergency room physician at the local hospital stated that Savieon arrived at the hospital about 12:30, had no pulse, and had a body temperature of 92.5 degrees. Hospital staff spent about an hour unsuccessfully attempting to revive Savieon before pronouncing him dead.

Savieon's body was taken to the Moultrie Crime Lab for an autopsy. Dr. Anthony Clark, the medical examiner, found many different injuries, some fresh and some old. According to Dr. Clark, deciding the time of an injury involves a medical estimate, and a fresh injury is one that could have occurred within minutes or up to ten or twelve hours ago.

Dr. Clark's external examination revealed swelling and bruising to the left temple consistent with a slap, a scratch on the right side of the neck, and a bruise on the chin, unusual for a non-ambulatory

---

[1] The crimes occurred on November 22, 2006, and Nixon was indicted on two counts of malice murder and two counts of felony murder on March 20, 2007. On November 8, 2007, a jury found him guilty of felony murder while in the commission of the felony of cruelty to a child, and the trial court sentenced him to life in prison. On November 14, 2007, Nixon filed a motion for new trial, and on May 1, 2008, the trial court denied that motion. On May 29, 2008, Nixon filed a notice of appeal, and on July 21, 2008, the appeal was docketed in this Court. The case was subsequently submitted for decision on the parties' briefs.

baby. There was also swelling of the left cheek and jaw. Dr. Clark found two very fresh, significant areas of fracture in the skull, fresh subdural bleeding around the brain, massive brain trauma, and retinal bleeding. According to Dr. Clark, significant force to the head was required to inflict these injuries, and the type of severe head injuries suffered by Savieon would likely cause a person to lapse into unconsciousness and to become unresponsive within seconds or a couple of hours. The retinal and subdural bleeding also indicated older injuries that had occurred two to three weeks before death. Dr. Clark found three sets of rib fractures in various stages of healing: three to four weeks old, five to seven days old, and fresh. Some fresh internal tears were found on the spleen consistent with a squeezing injury or a sharp blow. Dr. Clark determined that the cause of death was blunt-force head trauma resulting from either a sharp blow to the head or slamming up against something flat and firm.

Dr. Clark estimated a time of death based on the temperature taken at the hospital. Because temperature drops about 1.5 degrees per hour after death and the temperature of 92.5 degrees was recorded, Dr. Clark estimated the time of death to be between two and four hours before the temperature was taken.

On the evening of November 22, 2006, Nixon gave a statement to Michael Hall from the Department of Family and Children Services and Detective Tony Ward. He recalled that the previous night Savieon had been sick and awoke about 3:40 a.m. and that Nixon got up to feed him a bottle. Savieon took the bottle but then threw up several times. In the morning, Ms. Blake left for work, and Nixon stayed home with Savieon and Emani. After Ms. Blake left, Savieon woke up, and Nixon fed him and played with him. Nixon placed Savieon in his bouncy chair in the living room and took Emani to the bathroom. When he returned, Savieon was on the floor and the bouncy chair was turned upside down on top of him. After consoling Savieon, Nixon prepared a bottle, but Savieon did not take it. Nixon noticed that Savieon's feet were cold and that he was unresponsive. Nixon called Ms. Blake at work and told her Savieon was not breathing. Ms. Blake rushed home from work and called 911. Later, Nixon gave another statement telling essentially the same story, except that Nixon admitted that, after he put Savieon in the bouncy chair, he left and went to a neighboring apartment.

Ms. Blake testified that after Savieon was born, she stayed out of work for four weeks. After she returned to work, her father, Jeff Blake ("Mr. Blake"), cared for Emani and Savieon during the day. On a typical day, including the day before Savieon's death, Mr. Blake picked up Ms. Blake and the children between 7:00 and 8:00 a.m., dropped Ms. Blake off at work, and watched the children until picking Ms. Blake up around 3:00 p.m. However, because Nixon had

lost his job shortly before Savieon's death, he was watching the children for the first time on the day of the crime. Ms. Blake testified that Savieon had never appeared uncomfortable when being picked up or held. According to Ms. Blake, she, Nixon, and the children went to bed about 9:00-10:00 p.m. on November 21. Savieon, who was sleeping in the bed with Nixon and her, began crying around 3:00-4:00 a.m. on November 22, and Nixon got up, took Savieon to the living room, and gave him a bottle. Ms. Blake then went out to the living room. Savieon threw up after drinking the bottle but then went back to sleep. When Ms. Blake left for work between 7:00 and 8:00 a.m., Savieon was asleep in his playpen. She looked at him before leaving, and he appeared fine.

Mr. Blake testified that, after his daughter went back to work, he and his wife began keeping her children at his house. According to Mr. Blake, he would usually pick up Ms. Blake and the children between 7:00 and 8:00 a.m., drop Ms. Blake off at work, watch the children until picking up Ms. Blake around 3:00 p.m., and then take Ms. Blake and the children home. Mr. Blake added that he followed that schedule on November 21. Mr. Blake testified that nobody harmed Savieon while he was keeping him and that he never dropped Savieon and never saw anyone drop Savieon. Mr. Blake never saw his daughter or Nixon lose control with the children.

Nixon contends that the evidence presented is insufficient to support his conviction for felony murder. We disagree. Because the case is based solely on circumstantial evidence, the evidence must be sufficient to exclude every reasonable hypothesis of guilt "[except] that of the guilt of the accused."[2] Nixon contends that the evidence did not exclude what he contends is the reasonable hypothesis that Mr. Blake inflicted the lethal beating. The undisputed evidence, however, shows Mr. Blake did not have contact with Savieon after approximately 3:00 p.m. on November 21. Moreover, Dr. Clark testified that Savieon likely would have become unconscious or unresponsive shortly after such a beating and that the time of death was two to four hours before Savieon arrived at the hospital at approximately 12:35 p.m. This evidence supports the jury's rejection of the hypothesis that Mr. Blake killed Savieon.

Similarly, the evidence supports the jury's rejection of the other hypothesis that Nixon contends is reasonable — that Denise Blake killed her son. Both Nixon's statement to the police and Ms. Blake's testimony were to the effect that Ms. Blake did not beat Savieon during the night of November 21-22, and that, when Ms. Blake left the house around 7:00 to 8:00 a.m. on November 22, Savieon

---

[2] OCGA § 24-4-6; *Smith v. State*, 284 Ga. 304, 306 (667 SE2d 65) (2008).

appeared fine. This evidence, combined with the medical testimony and time line provided by Dr. Clark, supports the jury's rejection of the hypothesis that Ms. Blake killed her child.

Viewing the evidence in the light most favorable to the verdict supports only one reasonable hypothesis: that Nixon beat Savieon and caused his death. Accordingly, we conclude that the evidence is sufficient to support Nixon's conviction for felony murder.[3]

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 12, 2009.

*John C. Culp,* for appellant.

*Richard E. Currie, District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellee.

---

[3] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 24-4-6.