296 Ga. 658
FINAL COPY

S14A1701. BLACK v. THE STATE.

BLACKWELL, Justice.

Appellant D'hari Black was tried by a Fulton County jury and convicted of the murder of her 11-month-old son, Keith Black III, as well as aggravated assault and child cruelty as to her two-year-old daughter, Kyara Black. Appellant now contends that the evidence is insufficient to sustain her convictions and that she was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Appellant's son was killed on December 14, 2008. Appellant and her husband, Keith Black, Jr., were indicted on March 13, 2009 and jointly charged with malice murder, two counts of felony murder, two counts of aggravated assault (one as to her son and one as to her daughter), and three counts of cruelty to a child (one as to her son and two as to her daughter). Appellant and her husband were tried together, beginning on June 13, 2011, and the jury returned its verdict four days later, finding them both guilty on all counts. On July 11, 2011, Appellant was sentenced to imprisonment for life for malice murder, a consecutive term of imprisonment for ten years for the aggravated assault of her daughter, and a concurrent term of ten years for cruelty to a child. The verdict as to both counts of felony murder was vacated by operation of law, Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the remaining aggravated assault and cruelty to a child counts were merged into the crimes for which Appellant was sentenced. Appellant timely filed a motion for new trial on July 20, 2011, and she amended that motion on March 15, 2013 and again on August 13, 2013. The trial court denied her motion on May 5, 2014, and Appellant timely filed a notice of appeal on May 12, 2014. The case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence shows that around 5:30 on the morning of December 14, 2008, Appellant and her husband arrived at South Fulton Medical Center with both of their children. Their son (who weighed only 11 pounds) was not breathing and was unresponsive. Medical staff identified substantial bruising, lacerations, and contusions on the son's head. Attempts to resuscitate him were unsuccessful, and he was pronounced dead soon after the Blacks arrived at the hospital.

Meanwhile, a hospital nurse conducted a wellness check on the Blacks' daughter and identified multiple injuries on her buttocks, hips, and lower abdomen. Appellant claimed that the girl had sustained the injuries on a playground the previous summer, but that explanation was not consistent with the medical evidence, which indicated that some of the wounds likely were caused by an electrical cord or looped belt or rope and that other wounds were caused by being struck with a square- or rectangular-shaped object. The examination of the daughter also revealed other past injuries, including that

eight of her ribs had been fractured, that she had sustained numerous burns, and that she had broken her collarbone.[2]

When questioned by police investigators, Appellant offered numerous, and sometimes conflicting, excuses about how her children had been injured. Those excuses were not supported by the medical evidence, and witness testimony revealed that Appellant previously had been untruthful about the causes of other injuries sustained by her children. And a search of the Blacks' home led to the discovery of bloodstains and vomit in several places in their son's bedroom.

Autopsy results revealed that the Blacks' son died of non-accidental, blunt force trauma to the head and that his injuries were severe enough that he would not have survived long after sustaining them. The medical examiner concluded that the son likely was injured (either by being struck with something or having his body struck against something) sometime after midnight on the morning of December 14. And evidence was presented that Appellant was alone with her children from around 9:30 on the evening of December 13 until her husband and

---

[2] The rib fractures and burns served, respectively, as the bases for the counts of aggravated assault and cruelty to a child for which Appellant was convicted and sentenced, as described in footnote 1.

3

his friend arrived at the home around 4:30 on the morning of December 14, which was about an hour before the Blacks showed up at the hospital with their children.

Appellant claims that this evidence is insufficient to sustain her convictions because, she argues, some of the evidence could have supported her theory that her husband committed the crimes acting alone. As a result, Appellant argues, the State failed to exclude every reasonable hypothesis save that of her guilt pursuant to OCGA § 24-4-6.[3] However, not every hypothesis is a reasonable one, and the evidence "need not exclude every *conceivable* inference or hypothesis — only those that are reasonable." Merritt v. State, 285 Ga. 778, 779 (1) (683 SE2d 855) (2009) (emphasis in original). Whether an alternative hypothesis raised by the defendant is "reasonable" is a question committed principally to the jury, "and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding

---

[3] This case was tried under Georgia's old Evidence Code. Former OCGA § 24-4-6 provided that, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Former OCGA § 24-4-6 has been carried forward into the new Evidence Code as OCGA § 24-14-6.

4

unless it is insupportable as a matter of law." Carter v. State, 276 Ga. 322, 323 (577 SE2d 787) (2003) (citations omitted).

Here, it was undisputed that Appellant was alone with her children for almost the entire time during which the medical evidence established that someone inflicted the fatal injury on her son's head. Medical examinations of Appellant's children showed multiple injuries that they sustained as the result of abuse, and Appellant had a history of lying about the ways in which her children received their injuries. A jury could reasonably infer that Appellant lied about her children's injuries because she had inflicted the injuries herself, or the jury could infer that some or all of the injuries were inflicted by Appellant's husband and that he and Appellant shared a common criminal intent. See Jones v. State, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013) (criminal intent is a question for the jury, and it may be inferred from the defendant's conduct before, during, and after the commission of the crimes). Based upon this evidence, the jury was not required to find that Appellant's hypothesis that her husband committed the crimes acting alone was a reasonable one. See Nixon v. State, 284 Ga. 800, 802-803 (671 SE2d 503) (2009). Instead, the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt

that Appellant was — either directly or as a party to her husband's criminal activity — guilty of the crimes of which she was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant also contends that she was denied the effective assistance of counsel at her trial. To prevail on her claim of ineffective assistance, Appellant must prove both that the performance of her lawyer was deficient and that she was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of her lawyer was deficient, Appellant must show that the lawyer performed her duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574) (91 LE2d 305) (1986). And to prove that she was prejudiced by the performance of her lawyer, Appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389)

6

(2000). This burden, although not impossible to carry, is a heavy one. See Kimmelman, 477 U. S. at 382 (II) (C). We conclude that Appellant has failed to carry her burden.

Appellant's claim of ineffective assistance is based solely on her complaint that her trial lawyer failed to secure the testimony of a friend who provided childcare to the Blacks from February 2008 until June 2008, when the friend moved to New York. According to Appellant, her lawyer's failure amounted to ineffective assistance because the friend could have testified that she twice witnessed Appellant's husband abusing the children.[4]

Although trial counsel is required to conduct a reasonable and thorough pretrial investigation, including by locating and interviewing potential witnesses, the scope of a lawyer's investigation must be informed by her reasonable professional judgments. See Bulloch v. State, 293 Ga. 179, 182 (2) (744 SE2d 763) (2013). Here, Appellant's trial lawyer testified at the hearing on the motion for new trial that she would have asked Appellant and her husband

---

[4] According to the evidence presented at the hearing on Appellant's motion for new trial, the friend saw Appellant's husband strike the Blacks' daughter with a belt, and she later saw him "mash[ his hand] into the [son's] face" in an apparent attempt to make the son stop crying.

if there was anyone else who provided care for the children, but she might not have asked others because "the mother and father would be the best ones to know who else has been around the child[ren]." No evidence was presented that Appellant provided her lawyer with the name of the family friend, or that anyone else provided her with that name, other than that the friend's first name was written at the bottom of a note contained in a file that the lawyer apparently received when she was appointed to represent Appellant.[5] While Appellant suggests on appeal that the lawyer could have gotten information about the friend from Appellant's sister, the sister was not able to remember the friend's last name or provide any information about her other than that she occasionally took care of the children. And given that Appellant has not presented any evidence that she instructed her lawyer to contact the friend or gave her lawyer any reason to think that the friend might have knowledge of relevant facts, we cannot say that the lawyer was ineffective to the extent that she did not locate the friend and secure her testimony. See Moreno-Rivera v. State, 291 Ga. 336, 337 (2) (729 SE2d 366) (2012).

---

[5] The note is not contained in the record, nor was any evidence presented at the hearing on Appellant's motion for new trial about how the first name of the friend came to be written on the note.

In any event, it is not clear that the testimony of the friend would have been helpful to Appellant's defense. Because Appellant could be convicted as a party to the crimes even if her husband was the one who was directly inflicting injury upon the children, she attempted to show as a defense that she worked (or was commuting) 12-13 hours each day, spent little time with her children and even less time with her husband, and would not have known about his abuse. But according to the friend (who repeatedly referred to the Blacks as a "couple"), Appellant was present during both of the instances of abuse that the friend witnessed, and Appellant was fully aware of her husband's abusive conduct. Because this evidence was inconsistent with Appellant's defense, she has failed to establish that she suffered prejudice as the result of her lawyer's failure to locate and secure the testimony of the friend. See Moore v. State, 288 Ga. 187, 190 (2) (702 SE2d 176) (2010).

Judgment affirmed. All the Justices concur.


Decided March 2, 2015.

Murder. Fulton Superior Court. Before Judge Adams.

Michael W. Tarleton, James C. Bonner, Jr., for appellant.

9

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Peggy R. Katz, Lyndsey H. Rudder, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.