305 Ga. 231
FINAL COPY

S18A1252. BEASLEY v. THE STATE.

BOGGS, Justice.

In 2011, Terrance Beasley was found guilty of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a crime in connection with the shooting death of Rodriquez Hamm. Beasley appeals from the denial of his amended motion for new trial, asserting three enumerations of error. First, Beasley argues that his trial counsel was ineffective for failing to object when the prosecutor allegedly violated Mallory v. State, 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991), by commenting on his silence. Second, he argues that the trial court erred when it instructed the jury on the defense of habitation or, alternatively, that his counsel was ineffective for failing to maintain his objection to the defense of habitation instruction after the charge was given. Third, he argues that his counsel was ineffective for failing to object to the trial court's alleged closure of the courtroom, thus violating his

constitutional right to a public trial. We disagree and affirm.[1]

Viewed in the light most favorable to the verdicts, the trial evidence showed that Beasley attended a birthday party at the home of Hamm's grandmother on the night of November 21, 1998, where he argued with Hamm's sister and was told to leave. As he left with his girlfriend and two friends, he angrily stated that he would be back.

Beasley testified that as he and his then-girlfriend were standing by a truck

---

[1] The shooting occurred during the early morning hours of November 22, 1998. On June 22, 1999, a Fulton County grand jury indicted Beasley for malice murder, felony murder, aggravated assault, and possession of a firearm during commission of a felony. He was tried in 2000, and the jury found him guilty on all counts. But in 2009, the trial court granted Beasley a new trial. His second trial was in July and August 2011, and he was again found guilty on all charges. The trial court sentenced him to serve life in prison for malice murder, plus five years consecutive for the firearm charge. The trial court purported to merge the felony murder count, although it actually was vacated by operation of law, and properly merged the aggravated assault count into the malice murder conviction. On September 6, 2011, Beasley filed a motion for new trial, which he amended on June 13, 2016. After a hearing, the trial court denied the motion on January 5, 2018. See Owens v. State, 303 Ga. 254, 258 (4) (811 SE2d 420) (2018) (reminding the bench and bar that "we do not condone . . . inordinate delay[s] in . . . motion for new trial proceeding[s]," as such "delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial") (citation and punctuation omitted). Beasley filed a timely notice of appeal, and the case was docketed in this Court for the August 2018 term. The case was orally argued on September 10, 2018.

to leave the party, Hamm and some other men with guns approached, and one man put a gun to Beasley's head. Beasley's then-girlfriend testified that she witnessed the incident. She further testified that, as they were driving away, Beasley told her that he wanted to return to the party to retrieve his cousin because he feared that the men who "threatened" him would harm his cousin. She testified further that she tried to "cool off" Beasley by talking to him but that his friend, Jamar Hendricks, "hype[d]" Beasley and said that they were "going to go back and do th[o]se fools." Beasley then testified that, after dropping off their friends, he and Hendricks picked up a shotgun from a friend named "Tip." Beasley testified that he did not call the police after the alleged assault because he did not "want the problem," and he "just wanted to get [his] cousin" from the party.

The party was almost over when Beasley returned to Hamm's grandmother's house. He went to the basement's sliding-glass door with the shotgun and asked for his cousin to come out. He then went inside, stated that he was going to "kill every mother f----r in there," stepped outside, shot once in the air, and reentered the home. Witnesses testified that they did not see Hamm with a gun, and did not see Beasley shoot Hamm, but they heard more gunshots

3

as they tried to run away or take cover. Hamm's mother testified that, when she ran to Hamm after he was shot, he did not have a gun.[2]

The State's medical examiner testified that Hamm suffered two shotgun wounds: one to the back of his right leg and the other, which killed him, to the right side of his chest. No weapon was located on Hamm or in the basement of the home where Hamm was shot, but spent shotgun shell casings were recovered from the patio outside the sliding-glass door. A shotgun was never found.

1. Although Beasley does not challenge the sufficiency of the evidence on appeal, "it is our customary practice in murder cases nevertheless to review the record and determine whether the evidence was legally sufficient." Edwards v. State, 301 Ga. 822, 824 (1) (804 SE2d 404) (2017). After review, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Beasley was guilty of the crimes of which he

---

[2] Beasley claimed self-defense. He testified at trial that, when he returned to the party, Hamm fired a weapon at him, hitting him in his thigh, but that something in his pocket deflected the shot. Beasley testified that, after the shot was fired, Hamm's gun appeared to jam, and Beasley then fired his weapon four times because Hamm kept lifting the gun up to shoot him again. Despite Beasley's testimony that he acted in self-defense, "the jury was authorized to disbelieve his testimony and credit the testimony of the State's witnesses." Allen v. State, 290 Ga. 743, 744 (1) (723 SE2d 684) (2012).

was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error, Beasley asserts that his trial counsel was constitutionally ineffective for failing to object to the State's mention of Beasley's pre-arrest silence during its questioning of him on cross-examination and in the State's closing argument. Specifically, he argues that the prosecutor violated Mallory when he asked Beasley why he did not call the police before returning to Hamm's residence and then commented on that fact during his closing argument. Beasley also argues that the prosecutor improperly elicited testimony that, until Beasley's first trial and after an opportunity to view the State's discovery, he had never before claimed that the victim shot a gun at him.[3]

To succeed on a claim of ineffective assistance of counsel, Beasley must show both that his attorney's performance was deficient and that he was prejudiced as a result of that deficient performance. See Strickland v.

---

[3] During this exchange, the prosecutor asked Beasley, "[T]he first time you mentioned that Rodriquez Hamm shot at you and his gun jammed was in February of 2000, correct?" Beasley responded, "Right." The prosecutor then asked, "And you heard your previous attorney testify the State had turned over all the photos and all the police records in 1999, correct?"

Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Counsel's performance was deficient "only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms." Green v. State, 302 Ga. 816, 817 (2) (809 SE2d 738) (2018). And "prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different." Id. "Failure to satisfy either prong of the Strickland test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong." (Citation and punctuation omitted.) Id. at 818 (2).

We have held that "in criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative" and that "such a comment will not be allowed even . . . where he takes the stand in his own defense." Mallory, supra, 261 Ga. at 630 (5).[4] At a minimum, "Mallory focuses on commentary on a defendant's conduct between the time of the crime

---

[4] Mallory was decided under Georgia's old Evidence Code, which was in effect at the time of Beasley's 2011 trial. We express no opinion about the continuing validity of Mallory under the new Evidence Code. See Eller v. State, 303 Ga. 373, 384 (IV) (E) (811 SE2d 299) (2018); see also State v. Orr, 345 Ga. App. (812 SE2d 137) (2018) (petition for certiorari granted to address this question (S18G0994)).

6

and prior to arrest." State v. Sims, 296 Ga. 465, 469 (2) (a) (769 SE2d 62) (2015).

Even if Beasley could demonstrate that his counsel was deficient in failing to object to the prosecutor's questions, Beasley has failed to show prejudice. In an attempt to show prejudice, Beasley argues that the State's improper questioning harmed his credibility when he testified that he shot the victim in self-defense. But even if the implication that Beasley should have called the police if he had been assaulted or that he had the opportunity to tailor his self-defense testimony might have harmed his credibility, the State presented other significant evidence to refute Beasley's claim of self-defense. Multiple witnesses testified that they did not see the victim with a gun, and the victim's mother testified that he did not have a gun when she ran to him after he was shot. Nor did police officers locate any weapon on the victim or in the crime scene area or any evidence of the four shots Beasley claimed that the victim fired. Thus, given the collective weight of the evidence refuting Beasley's self-defense claim, Beasley has not shown that there is a reasonable probability that, absent counsel's failure to object to the State's questioning, the outcome of his trial would have been more favorable to him. See Green, supra, 302 Ga. at 817

(2); Hernandez v. State, 299 Ga. 796, 801 (4) (792 SE2d 373) (2016).

3. In his second enumeration of error, Beasley contends that the trial court erred in instructing the jury on the defense of habitation form of justification because the "habitation must be the defendant's, not the victim's."[5] He claims that he preserved this issue for appeal because his trial counsel asked for a "continuing objection" to the habitation instruction at the charge conference and objected after the charge was given.

At the charge conference, trial counsel objected that the "habitation" that

_____

[5] The defense of habitation form of justification is codified at OCGA § 16-3-23 and states:

A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation; however, such person is justified in the use of force which is intended or likely to cause death or great bodily harm only if: . . . [t]he entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence; . . . [or] the person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.

will support this type of justification must be the defendant's and not the victim's — the same argument he now raises on appeal. But that was not the basis for his objection after the trial court charged the jury. Instead, he objected that the trial court should have instructed the jury on the language of OCGA § 16-3-23 as it existed in 1998, when the crimes were committed, rather than the language of that statute as it existed in 2011, when the case was tried. But he does not pursue that argument on appeal. Thus, whether Beasley is entitled to ordinary appellate review of his claim that the challenged instruction should not have been given at all depends on whether the record shows that his request for a "continuing objection" at the charge conference was granted. An objection cannot be viewed as continuing unless "the trial court specifically grants a continuing objection, or when the trial court on its own initiative clearly designates an objection as continuing." State v. Larocque, 268 Ga. 352, 354 (489 SE2d 806) (1997). The record does not show that either happened here.

At the charge conference, the State requested that the trial court instruct the jury that a person is justified in using force against another person when and to the extent that the person reasonably believes that such force is necessary to prevent or terminate another's unlawful entry into or attack upon a residence.

Beasley objected to the giving of such an instruction, and a lengthy discussion between Beasley and the trial court followed. Beasley contended that the charge was inappropriate because his defense was not that he used force against a person coming into his residence. The trial court then recited the evidence presented that supported the charge, namely that the victim had a gun and the home was being invaded by someone with a shotgun. Beasley responded that the State's evidence did not support the charge and argued strenuously that the particular charge was "for the use of a defendant, not a victim." The trial court asked why the charge could not apply to both the defendant and the victim, and Beasley elaborated on his position that the instruction was never intended to apply to a deceased victim, eventually stating that if "the court decide[d] to give it, [he'd] ask it be a continuing objection."

The trial court, turning to the State for its position, said, "All right. What do you say?" The prosecutor responded that "there's no such thing as a charge that's only . . . able to be given by the defendant," but stated that he would research the issue over a break. The trial court then talked about other jury instructions with Beasley and afterward took a recess. After the recess, the prosecutor informed the trial court that he had found a Court of Appeals case

that supported the giving of an instruction on the victim's use of force against the defendant when necessary to prevent or terminate an unlawful entry or attack upon the victim's residence, so the instruction at issue applied in Beasley's case. The trial court agreed with the State and indicated that it would give the charge. Beasley did not ask for a ruling on his request for a continuing objection.

Accordingly, the record does not show that the trial court specifically granted Beasley a continuing objection, or that the trial court on its own initiative clearly designated his objection as continuing. Therefore, the objection, which he asked to be continuing, did not preserve this issue for ordinary appellate review. See Larocque, supra, 268 Ga. at 354. And because his request for a continuing objection was not granted, Beasley was required to object with specificity after the court charged the jury, pursuant to OCGA § 17-8-58, but he failed to do so.

Although Beasley failed to preserve this issue in the trial court, he has enumerated it as error on appeal, and we therefore review it for plain error. See White v. State, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012). To meet the plain error test, four prongs must be satisfied: (1) there was no affirmative waiver of the issue; (2) the error was obvious; (3) the instruction likely affected the outcome

of the proceedings; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. Pretermitting the other three prongs, we conclude that Beasley has failed to show that any alleged error in giving the instruction was obvious, given that we have not decided the issue and that, in Robison v. State, 277 Ga. App. 133 (625 SE2d 533) (2006), the Court of Appeals rejected an argument that the trial court erred in giving a jury instruction on OCGA § 16-3-23, where the habitation being defended was the victim's and not the defendant's. Because Robison remains good law, there is no obvious error, and therefore, no plain error exists.[6]

It is also because of Robison that Beasley's related claim — that his trial counsel was ineffective for failing to maintain his objection to the instruction — fails. In light of Robison, the trial court was permitted to instruct the jury on the defense of habitation. Therefore, any objection made by counsel would have been meritless, and the "[f]ailure to make a meritless objection cannot support a claim of ineffective assistance," Watson v. State, 303 Ga. 758, 763 (3) (814 SE2d 396) (2018).

---

[6] We express no opinion on whether Robison was correctly decided.

12

4. In his third enumeration of error, Beasley claims that his trial counsel was ineffective for failing to object to the trial court's temporary closing of the courtroom to the public during the trial. The trial court closed the courtroom to question a male juror who reportedly knew people in the courtroom that day who were associated with Beasley. After the male juror testified that he had told another juror about his relationship with Beasley's associates, the trial court excluded the male juror. After a recess for lunch, the trial court polled the jury and found that no juror had been improperly influenced by the excluded juror.

Beasley did not question trial counsel at the motion for new trial hearing regarding an alleged courtroom closure involving the questioning of jurors. "In the absence of testimony to the contrary, counsel's actions are presumed strategic." (Citation and punctuation omitted.) Holmes v. State, 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001).

We cannot say that not objecting to the temporary closure was patently unreasonable trial strategy under the circumstances of this case. A competent attorney might reasonably decide that a temporary closure would benefit his client in this situation. For example, the attorney might think it beneficial to his client to be able to question jurors about their possible intimidation by his

13

client's associates without having those associates present during the questioning. Doing so might aid his efforts to obtain a favorable jury composition. See Johnson v. State, 293 Ga. 641, 643 (3) (748 SE2d 896) (2013) ("[P]ublic access to voir dire can be limited . . . to promote juror candor and minimize the risk of juror taint."); Muse v. State, 293 Ga. 647, 651 (2) (a) (748 SE2d 904) (2013) ("We cannot say that it was unreasonable for the lawyer to think that closing the courtroom might facilitate his efforts to [obtain a favorable jury composition], and Appellant has failed, therefore, to overcome the strong presumption that the failure of her lawyer to object to the closing was a reasonable trial strategy."); State v. Abernathy, 289 Ga. 603, 611 (5) (715 SE2d 48) (2011) ("Given that the [closure] was designed with the express purpose of maximizing the odds of . . . a fair trial, [the defendant] cannot make" the required showing of harm.).

Judgment affirmed. All the Justices concur.

Decided February 18, 2019.

Murder. Fulton Superior Court. Before Judge Newkirk.

Brian Steel, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General, for appellee.