308 Ga. 33
FINAL COPY

S19A1520.  WALKER v. THE STATE.

BENHAM, Justice.

Appellant Otheron Walker was convicted of malice murder in

connection with the beating death of his ten-month-old daughter,

Daijah White.[1]  On appeal, Walker contends that the evidence was

---

[1] The crimes occurred on October 16, 2003.  In March 2005, an Upson County grand jury indicted Walker and his girlfriend, Janice White, for the following offenses: malice murder, felony murder predicated on aggravated assault, two counts of aggravated assault (related to the trauma to Daijah's head and abdomen), and cruelty to children in the first degree.  White was separately indicted on an additional count of felony murder.  Walker and White were tried jointly in August 2005 in Spalding County after the trial court granted the defendants' motion for a change of venue.  A jury returned guilty verdicts on all counts with respect to Walker, and White was convicted of, among other things, felony murder.  The trial court sentenced Walker to life imprisonment for malice murder.  The remaining counts were vacated by operation of law or were merged by the trial court for sentencing purposes; those rulings have not been challenged on appeal.  See *Dixon v. State*, 302 Ga. 691, 698 (808 SE2d 696) (2017).  In November 2006, this Court affirmed White's convictions and sentences, though we did correct a sentencing error. See *White v. State*, 281 Ga. 276 (637 SE2d 645) (2006).

Over a decade later, Walker successfully moved the trial court for leave to file an out-of-time motion for new trial, and Walker filed a motion for new trial on May 10, 2017, which he later amended numerous times.  Following a hearing, the trial court denied the motion (as amended) on March 1, 2019, and Walker thereafter filed a timely notice of appeal to this Court.  This appeal was docketed in this Court to the August 2019 term and thereafter submitted for consideration on the briefs.

insufficient, that the jury was improperly charged, and that trial counsel was ineffective. We affirm.

Walker was tried jointly with Daijah's mother, Janice White, and we previously summarized the evidence presented at their joint trial as follows:

> Daijah[2] was ten months old at the time of her death. She lived with White, her father [Walker], and a brother, who was then 22 months old. On October 16, 2003, White left for work at 4:10 p.m.; a neighbor heard Daijah "whining" inside the apartment. The neighbor and Walker spoke outside the apartment for approximately 20 minutes. No other adult was at the apartment.
>
> At 5:46 p.m., a physician was called to the emergency room of a hospital where Daijah had been taken by ambulance; Daijah was already dead. She was bruised on her face and head, shoulder, and chest, which appeared to have been squeezed by hands. There was a cut on her abdomen, and marks on her groin and a thigh, showing very recent blows. On the outside of her genitalia, there was bruising and some healing lesions, and there were bruises and lacerations on the back of her thighs, including the mark of a strap; these injuries had occurred two or three days before her death, while some of the injuries to the torso were the final blows before death. Walker told the physician that Daijah's brother must have thrown her off the bed or against a wall.

---

2 The record before us reflects that the victim's name is spelled "Daijah." In our previous decision, we spelled the victim's name "Daija." We have modified the earlier spelling of the victim's name to match what is in the record in this case.

Earlier, Walker had told the emergency personnel who came to the apartment that Daijah had fallen from the bed. Neither of these accounts was consistent with the observed injuries.

. . .

The medical examiner testified that the cause of Daijah's death was blunt force injuries to the head and body. Fatal abdominal bleeding had occurred due to internal bruising produced by exterior blows. Her final injuries also included two skull fractures, probably from two separate blows. A retinal injury indicated that Daijah was violently shaken a month before death. Bruising on her throat indicated that Daijah had been grasped firmly under the chin by an adult hand. Daijah's buttocks revealed "bruising on top of bruising on top of bruising" that had occurred over the last two or three days before death; the majority of the bruises were very recent. She also had a bruise on her leg caused by an object such as a belt. Bruises covered 40 to 50 percent of Daijah's body. It was "not plausible at all" that Daijah's injuries were caused by a fall from a bed. The medical examiner opined that Daijah suffered her final injuries two to three hours before death; on cross-examination, the medical examiner agreed that there was an "80 or 90 percent chance" that death would have occurred "within an hour or thereabouts" after the final injuries.

Daijah died on a Thursday. The previous weekend, from Friday night until Sunday evening, Daijah stayed with an aunt. At that time, Daijah had a bruise on her thigh, and a small bruise on her cheek, but no other injuries.

*White v. State*, 281 Ga. 276, 277-278 (637 SE2d 645) (2006).

Additionally, the jury heard testimony that Walker, while in jail

3

awaiting trial, sent a letter to White in which he wrote, "I've never lost [any] of my five [children] before [Daijah]. I never hurt any of them before her."

1. Walker first argues that the circumstantial case against him was insufficient to sustain his conviction. Specifically, he asserts that the evidence merely showed that he was present in the residence when some of Daijah's injuries were inflicted, leaving open the possibility that someone other than Walker harmed Daijah or that Daijah's injuries were the result of a fall. We disagree.

> Under both former OCGA § 24-4-6, in effect at the time of [Walker's] trial, and present OCGA § 24-14-6, in order to convict [Walker] of the crimes based solely upon circumstantial evidence, the proven facts had to be consistent with the hypothesis of [his] guilt and exclude every reasonable hypothesis save that of [his] guilt. Not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable. The reasonableness of an alternative hypothesis raised by a defendant is a question principally for the jury, and when the jury is authorized to find that the evidence, though circumstantial, is sufficient to exclude every reasonable hypothesis save that of the accused's guilt, this Court will not disturb that finding unless it is insupportable as a matter of law.

4

(Citations omitted.) *Akhimie v. State*, 297 Ga. 801, 804 (1) (777 SE2d 683) (2015).

Here, the evidence showed that, at the time she died, Daijah had sustained numerous injuries in the days and hours leading up to her death. The jury heard testimony that Daijah was residing with Walker and White during this time and, in fact, that Walker was the sole adult with Daijah in the hours preceding her death. Though Walker provided various accounts of a fall — and attempted to place blame on Daijah's toddler-age brother — the jury heard expert testimony that Daijah's injuries were not consistent with a fall. Finally, the jury learned that Walker had made an incriminating statement in a letter to White while awaiting trial. "Based upon this evidence, the jury was not required to find that [Walker's] hypothesis . . . was a reasonable one." *Black v. State*, 296 Ga. 658, 660 (1) (769 SE2d 898) (2015). See also *Nixon v. State*, 284 Ga. 800 (671 SE2d 503) (2009). The evidence was also sufficient as a matter of constitutional due process to authorize a rational trier of fact to find beyond a reasonable doubt that Walker was guilty of the

5

crime of which he was convicted.  See *Jackson v. Virginia*, 443 U. S.

307 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2.  Walker next argues that the jury was improperly instructed

with respect to intent, malice murder, and the State's burden of

proof.[3]  "In reviewing a challenge to the trial court's jury instruction,

we view the charge as a whole to determine whether the jury was

fully and fairly instructed on the law of the case." (Citations and

punctuation omitted.) *Allaben v. State*, 299 Ga. 253, 259 (3) (d) (787

SE2d 711) (2016).  We consider each of Walker's four arguments in

turn.[4]

---

[3] Walker also challenges the trial court's instructions with respect to felony murder, aggravated assault, and cruelty to children in the first degree. However, because those counts were either vacated by operation of law or merged by the trial court for sentencing purposes, any claim of error with respect to these offenses is moot.  See *Solomon v. State*, 304 Ga. 846 (3) (823 SE2d 265) (2019).

[4] Walker suggests that these claims may not be preserved for appellate review because trial counsel did not specifically object or ask for curative instructions, and he argues that trial counsel may have been ineffective in this regard. See OCGA § 17-8-58 (a) ("Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. . . .") (effective July 1, 2007).  However, at the time of Walker's trial in August 2005, counsel was generally not required to object to jury instructions to preserve potential errors; instead, as counsel did here, a party was permitted to simply "reserve the right to object on motion for new trial or

(a) The trial court gave the pattern jury instruction on "definition of crime," charging the jury as follows:

> Now, jurors, these defendants are charged with crimes against the laws of this state. And in that connection I charge you that these defendants are charged with these crimes, and a crime is a violation of a statute of this state in which there is a joint operation of an act or omission to act and an intention *or criminal negligence.*

(Emphasis supplied.) Walker argues that this reference to criminal negligence was improper because it was not an element of any offense and, further, that the instruction likely misled the jury on the issue of intent. However, the trial court's instruction was an accurate statement of the law. See OCGA § 16-2-1 (a).[5] Though the instruction makes a passing reference to criminal negligence, there was no further mention of the term in the jury charge, and the jury was otherwise properly instructed on the general law of intent, as well as the intent required to prove malice murder. Accordingly,

---

on appeal." *Rivers v. State*, 250 Ga. 303, 309 (298 SE2d 1) (1982). Thus, these claims are preserved for our review.

[5] "A 'crime' is a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence."

this argument is without merit.  See *Holmes v. State*, 272 Ga. 517 (7) (529 SE2d 879) (2000) (instruction on definition of crime not erroneous where jury was otherwise properly instructed on the elements of the relevant offense).

(b)  Walker next argues that the trial court erred when it instructed the jury as follows:

> The first of these offenses is malice murder, for which both of them are charged. And in that connection I charge you the Official Code of Georgia, Title 16-5-1, which reads in part that a person commits murder when that person unlawfully and with malice *or forethought*, either expressed or implied, causes the death of another human being.

(Emphasis supplied.)  According to Walker, this instruction authorized the jury to convict on malice murder based on malice *or forethought* rather than malice *aforethought*.  However, "[a] mere verbal inaccuracy resulting from a slip of the tongue which does not clearly mislead or confuse the jury is not reversible error." (Citations and punctuation omitted.) *Davenport v. State*, 283 Ga. 171, 172 (656 SE2d 844) (2008).  Here, the trial court's malaprop was a singular occurrence, and the jury was otherwise properly and accurately

8

charged on malice murder. Further, the jury was instructed that the State was required to prove every material allegation of the indictment — which includes the language "malice aforethought" — and every essential element of the offenses charged therein. Accordingly, considering the trial court's instruction as a whole, there is no reversible error.

(c) Walker next complains that the jury was misled and confused when the trial court, before instructing the jury on *felony* murder, mistakenly announced its intention to charge on *malice* murder. Specifically, the trial court advised the jury as follows:

> Now, these defendants are also charged in Count 2 with *felony* murder; and in this instance the underlying felony being aggravated assault. So what I'm going to do, I'm going to charge you first concerning *malice* murder; and then I'm going to charge you the offense of aggravated assault because it is the underlying offense in this charge.
> A person commits the crime of murder when in the commission of a felony that person causes the death of another human being with or without malice.

(Emphasis supplied.) Contrary to Walker's assertion on appeal, this language did not suggest to the jury that "the mere commission of another felony was sufficient to convict of both malice and felony

9

murder." Instead, it would have been obvious that the trial court had simply misspoken; the trial court referenced *felony* murder before mistakenly mentioning malice murder and then the trial court properly charged the jury on *felony* murder. Again, considering the trial court's instruction as a whole, there is no reversible error. See *Delacruz v. State*, 280 Ga. 392 (5) (627 SE2d 579) (2006).

(d) Walker argues that the trial court committed reversible error when it charged the jury that reasonable doubt "does not mean a vague or arbitrary or capricious doubt, *nor does it mean the possibility that the defendants may be innocent*." (Emphasis supplied.) While Walker is correct that this Court has "emphatically disapproved" this language, see *Coleman v. State*, 271 Ga. 800, 804 (8) (523 SE2d 852) (1999), this instruction is not cause for automatic reversal, see *Anderson v. State*, 286 Ga. 57 (5) (685 SE2d 716) (2009). Instead, "reversal is not required if, when viewing the charge as a whole, the State's burden of proof is adequately defined." *White v. State*, 302 Ga. 806, 807 (2) (809 SE2d 749) (2018).

10

Here, the trial court properly instructed on Walker's presumption of innocence, correctly charged that Walker had no burden of proof, and properly advised that the State had the burden of proof to establish the allegations and elements of the charged offenses beyond a reasonable doubt. "We therefore conclude that, viewing the charge as a whole, the jury instruction did not mislead the jury as to the standard of proof required by due process." Id.

3. Finally, Walker alleges that trial counsel was ineffective in five different ways. These claims have no merit.

Walker succeeds on his claims only if he demonstrates both that his trial counsel's performance was deficient and that he suffered prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To prove deficient performance, [an appellant] must show that his lawyer performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). With respect to prejudice, Walker must

11

establish that "the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious that they likely affected the outcome of the trial." *Jones v. State*, 305 Ga. 750, 755 (4) (827 SE2d 879) (2019).

"[S]atisfaction of this test is a difficult endeavor. Simply because a defendant has shown that his trial counsel performed deficiently does not lead to an automatic conclusion that he was prejudiced by counsel's deficient performance." *Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019). And "[i]f an appellant is unable to satisfy one prong of the *Strickland* test, it is not incumbent upon this Court to examine the other prong." (Citation and punctuation omitted.) Id. at 143 (3). With these principles in mind, we address each of Walker's arguments in turn.

(a) Walker first argues that trial counsel was ineffective for failing to object to what he says are two instances of improper testimony from his co-defendant, White, who testified in her own defense at their joint trial.

In the first instance, White testified that, before she received

12

Walker's jailhouse letter, she "didn't know what had happened to [Daijah]," but that, after reading the letter, she was convinced that "he did it." Walker contends that White's testimony implied that Walker was guilty and, as such, that trial counsel should have objected on the basis that it was improper opinion testimony under former OCGA § 24-9-65.[6] In the second instance, White testified during cross-examination that Walker "was more violent to" Daijah than he was toward White. White then apparently directed comments toward Walker, stating, "You know, you could have did that to me or to yourself; could have took yourself out, you didn't have to hurt her like that." Walker asserts that this testimony was improper character testimony and faults trial counsel for failing to object and moving to strike.

When asked why he failed to object, trial counsel testified that he was cognizant that the trial was going "on and on" and that he

---

[6] "Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor. If the issue shall be as to the existence of a fact, the opinions of witnesses shall be generally inadmissible."

13

was concerned that an objection would have given "validity" to the testimony, as well as given it more "attention" and "focus." Counsel also testified that White's testimony was, at least in part, non-responsive. Finally, trial counsel explained that he expected White's testimony to be antagonistic toward Walker's defense and that he had decided not to object or move to strike "based on every little statement" or "jab" that she made. The trial court credited trial counsel's testimony in this regard — noting that part of trial counsel's strategy was hoping the jury would be turned off by White's antagonism. The trial court's factual determinations are supported by the record; we agree with the trial court's conclusion that this was reasonable trial strategy and, thus, did not amount to deficient performance. See *Seabrooks v. State*, 306 Ga. 670 (2) (a) (832 SE2d 847) (2019).

(b) White also argues that trial counsel should have objected to two other instances of witness testimony.

In the first instance, Daijah's pediatrician testified concerning her interaction with White and Walker on the evening Daijah

14

arrived dead at the emergency room. The physician was asked if "both" White and Walker had passed a "drug screen," and she answered, "No." When asked about this comment, trial counsel testified that he did not object because he did not want to highlight the testimony with an objection and, also, because the testimony did not squarely establish that *Walker's* drug screen was positive. The trial court credited trial counsel's testimony in this respect. Again, the trial court's factual determinations are supported by the record, and we agree with the trial court that this was reasonable trial strategy. See *Gomez v. State*, 301 Ga. 445, 460 (7) (a) (801 SE2d 847) (2017).

In the second instance, an Emergency Medical Technician ("EMT") who responded to the scene testified that she observed Daijah on the floor of the master bedroom and that the child was covered in bruises. The EMT testified that, although Walker reported Daijah had fallen off the bed, she and her partner found this explanation "fishy" given the nature and locations of the child's injuries. Walker contends that trial counsel should have objected to

15

this testimony on the basis that, under former OCGA § 24-9-80,[7] the testimony was an improper comment on Walker's credibility. Trial counsel could not recall why he did not object in this instance; the trial court concluded that counsel was deficient for failing to object but that Walker had suffered no prejudice. We agree with the trial court's conclusion concerning prejudice.[8]

Though the EMT testified that Daijah appeared to have suffered extensive bruising and, as such, that she was dubious of Walker's explanation that Daijah fell from the bed, the jury heard similar testimony from two other experts — medical doctors — who detailed Daijah's numerous injuries and opined in great detail how those injuries were wholly inconsistent with a mere fall from the bed. In light of the extensive testimony from other expert witnesses

---

[7] "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court."

[8] It appears that the trial court's conclusion regarding deficient performance was premised on trial counsel's inability to recall a basis for not objecting. However, when trial counsel cannot recall specifics about the trial, including the reasons for his failure to make certain objections during the trial, there remains a strong presumption that his decisions were a matter of strategy and trial tactics rather than sheer neglect. See *Brown v. State*, 288 Ga. 902 (5) (708 SE2d 294) (2011).

who also cast serious doubt on Walker's explanation about Daijah's injuries, we agree with the trial court that counsel's failure to object here did not likely affect the outcome of the trial. See *Smith v. State*, 307 Ga. 106, 115 (5) (834 SE2d 750) (2019) (defendants not prejudiced by erroneous admission of improper testimony where it was "merely cumulative of other properly admitted evidence").

(c) The trial court ordered that no one be permitted to enter or exit the courtroom during closing argument or the jury charge, and Walker contends that trial counsel was ineffective for failing to object to this closure of the courtroom.

At the hearing on Walker's motion for new trial, trial counsel testified that he welcomed the trial court's decision, as it facilitated an unfettered and uninterrupted closing argument and jury charge. We cannot say that counsel's decision was patently unreasonable trial strategy, as trial counsel may have reasoned that a less-distracted jury would better suit his client. See *Beasley v. State*, 305 Ga. 231, 237 (4) (824 SE2d 311) (2019) (trial counsel's decision against objecting during trial to the closure of the courtroom while

17

the trial court questioned a juror reasonably strategic where it could conceivably benefit defendant); *Muse v. State*, 293 Ga. 647 (2) (a) (748 SE2d 904) (2013) (reasonable for trial counsel to conclude that closing the courtroom during voir dire could have facilitated effort to strike as favorable a jury as possible). Accordingly, counsel did not act deficiently in this regard.

Nevertheless, even if counsel did act deficiently, Walker has failed to demonstrate prejudice. See *Weaver v. Massachusetts*, ___ U. S. ___ (IV) (137 SCt 1899, 198 LE2d 420) (2017); *Reid v. State*, 286 Ga. 484 (3) (c) (690 SE2d 177) (2010). The transcript reflects that the public was permitted to be present in the courtroom during trial and that, during closing argument and the jury charge, individuals were present in the gallery. In short, the trial court simply restricted movement *in and out* of the courtroom during the time in question. Walker has not identified anyone who was excluded from the courtroom; likewise, he has not shown that the trial court's order rendered his trial fundamentally unfair or that it somehow altered the outcome of trial. Accordingly, Walker is not

18

entitled to relief on this claim. See *Reid*, 286 Ga. at 488.

(d) Walker also asserts that trial counsel was ineffective for failing to lodge a timely objection to a portion of the State's closing argument. Closing argument was not taken down, but a transcribed bench conference occurring after both closing argument and the jury charge reflects that trial counsel claimed the prosecutor had argued in closing that "he had not heard any evidence from the stand to show that Mr. Walker was not guilty." Trial counsel objected on the basis that this was "impermissible burden shifting" and requested a curative instruction. The prosecutor responded that, although he had made the argument, it was in response to Walker's closing argument that "no one had testified that [Walker] did these things." Trial counsel's objection and motion were plainly untimely, but the trial court addressed the issue and, in effect, overruled it, explaining to the parties that the jury had been properly instructed both on the State's burden of proof and that counsel's argument was not evidence.

Trial counsel's untimely objection notwithstanding, Walker

has not demonstrated prejudice as the record exists here. For all that appears, the State's remark was a passing comment,[9] the trial court properly charged the jury on the respective burdens of proof and non-evidentiary value of closing argument, and the evidence against Walker was strong. As such, the closing argument did not likely affect the outcome of Walker's trial. See *Mosley v. State*, 295 Ga. 123, 125 (2) (757 SE2d 828) (2014) (defendant suffered no prejudice from trial counsel's failure to object to closing argument where evidence was strong and the jury was properly instructed).

(e) As referenced above, the jury learned that Walker made certain incriminating statements in a jailhouse letter to White. Walker asserts that trial counsel was ineffective for failing to request a jury instruction consistent with former OCGA § 24-3-53, which states: "All admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not

---

[9] Trial counsel testified at the hearing on Walker's motion for new trial that the remark was a "one-line comment" that was not "continued" during the State's closing.

justify a conviction." Trial counsel testified at the hearing on the motion for new trial that he felt that the "letter spoke for itself" and that, though he was familiar with former OCGA § 24-3-53, his strategy was simply to address the letter during closing argument. Further, given the indirect nature of the remark in the letter, it would have been reasonable for trial counsel to decide against having the jury instructed that the statement could be deemed an admission or confession. "[A]s counsel articulated a valid strategic decision regarding [this] instruction, failure to request [this] charge is not ineffective assistance." *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

(f) Finally, the cumulative prejudice from any assumed deficiencies discussed in Division 3 (b), (c), and (d) is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies. See *Jones v. State*, 305 Ga. 750, 757 (4) (e) (827 SE2d 879) (2019). Accordingly, Walker is not entitled to relief under this theory.

*Judgment affirmed. All the Justices concur.*

21

DECIDED FEBRUARY 10, 2020.

Murder. Upson Superior Court. Before Judge Sams.

*William A. Adams, Jr.*, for appellant.

*Benjamin D. Coker, District Attorney, B. Ashton Fallin, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.